[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 30, 2003
THOMAS K. KAHN
CLERK

No. 02-12453

D.C. Docket No. 99-00493 CV-FTM 29D

ELWOOD I. KAPLAN and
NORMA KAPLAN,

Plaintiffs-Appellees,

versus

DAIMLERCHRYSLER, A.G.
 f.k.a. Daimler-Benz Aktiengesellshaft,
MERCEDES-BENZ, U.S.A., INC.,
f.k.a. Mercedes-Benz of North
America, Inc.,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Middle District of Florida, Fort Myers Division

_____

**(May 30, 2003)**

Before BIRCH and HULL, Circuit Judges, and EDENFIELD[*], District Judge.

_____

[*]   Honorable B. Avant Edenfield, United States District Judge for the Southern District of Georgia,
siting by designation.

EDENFIELD, District Judge:

We are asked in this case to decide whether a district judge erred in *sua sponte* imposing F.R.Civ.P. 11 sanctions against a party for filing, the judge concluded, unnecessary (and one frivolous) *in limine* motions on the eve of trial. We conclude that he did, both procedurally (there exists a material variance between the court's show-cause notice and the ultimate basis for the sanction imposed) and on the merits (the complained-of conduct does not meet Rule 11's "akin-to-contempt" standard).

## I. **BACKGROUND**

Alleging, *inter alia*, strict products liability, Elwood and Norma Kaplan sought recovery from appellants DaimlerChrysler, A.G. (DC) and Mercedes-Benz USA, Inc. (hereafter for convenience, "DC") for damages the Kaplans suffered when their Mercedes-Benz's side door air bag failed to deploy in a collision.

During a pretrial conference, DC counsel Myron Shapiro inquired of the district court's deadline for filing *in limine* motions. The court replied:

> My dear friend, let me tell you. Maybe it's because of my specialty, rules are not applied to defeat justice. Okay. The object of the entire thing is to try and get justice done. So I know the rule says [file all *in limine* motions] ten days before. So who cares? All right. We will work it out just so long as it's in sufficient time so I can read it and know it and get to the point where I can try the case properly.

The court scheduled the case for its March 12, 2002, trial term and trial

commenced on March 14th. Beginning on March 4, DC filed nineteen *in limine* motions over the next nine days. Many sought to exclude evidence that plaintiffs indicated (via witness and exhibit lists, etc.) they could use at trial. Plaintiffs mooted many motions by indicating no opposition. Counsel thus did not informally resolve the matters on their own via evidentiary stipulations.

Two days before trial, the district court denied two *in limine* motions as "moot" (no opposition) and seven (summarily) on the merits. On the day before trial, it denied three more as moot and four (three summarily) on the merits. Finally, it denied three more (two as moot, one on the merits) on March 14, the first day of trial. None of the rulings consumed more than a paragraph.

In his March 13 *in limine* order, the judge chastised DC for seeking to exclude a "Day in the Life" videotape of Elwood Kaplan, insisting that the motion could have been raised at trial and not in a motion filed "at the last possible moment." He also focused on DC's *in limine* motion to exclude derogatory statements (Nazis, concentration camps, etc.) in reference to DC as a German company:

> While Plaintiffs have agreed to the motion, it is completely unwarranted and may well be within the standard of frivolous motions. There is absolutely nothing in the record to indicate that Plaintiffs have or intend to muddy the issues in this case or taint the jury by referring to "World War II, Adolph Hilter, the Nazis, slave labor, concentration camps, gas chambers, or any other inflammatory aspect of German history." This motion is **DENIED AS MOOT.**

3

In open court on the first day of trial, the court complained to DC that he had received a "plethora of motions" and

> there's a finding that *one* of them is frivolous. I must say I was terribly tempted to find others frivolous, but I don't like doing that because it involves [F.R.Civ.P. 11]. This *one* is clear. Rule 11 sanctions will eventually [be imposed], I guess, unless you can convince me otherwise, but Rule 11 sanctions would be appropriate.

(Emphasis added). He then directed DC's counsel to preserve their time records "in connection with this ... I want all bills issued by your firm in connection with this case if I find the Rule 11 sanctions necessary."

The next day, DC filed written objections to deposition-transcript testimony designated by the plaintiffs. The judge berated Shapiro for submitting objections to deposition testimony without submitting the deposition itself, then cut him off. Shapiro protested: "Your Honor, sometimes you give me no opportunity to explain." The court responded:

> Would you please -- at this point we have work to do. I'll give you an opportunity to explain in writing over the weekend. I want an answer, basically what is an order to show cause directed to you and [co-counsel] as to why you should not be punished under Rule 11 for *that* motion. I also want a complete explanation as to why you are holding back these things [*i.e.*, the deposition] and asking me to rule in the air. I want a full and complete explanation. [¶] Is that clear?

(Emphasis added).

After further colloquy, he clarified that "*that* motion" meant the "Nazi" *in*

4

*limine* motion.  Kaplan complied.

The court did not bring the Rule 11 matter up again until day eight of the trial, when he directed DC's counsel to produce their time records by the next morning. Over Shapiro's (and his law firm's) objection to production, he issued a Rule 11 sanctions order, later amended, noting that DC counsel Shapiro had, two days before trial, "inundated this court with ....  a total of nineteen motions *in limine* filed in the days preceding trial."  Many, he decided, were "at best borderline and others undoubtedly filed either for the illegitimate purpose of harassing opposing counsel and the court on the eve of trial or to generate additional fees from [counsel's] deep pocketed client." *Id.*  "It [was] not only the timing of [DC's] motions, however, that ma[d]e [the district judge] question counsel's motives, but also their content."

The judge did not, however, identify which motions made him question counsel's motives.  But he reiterated his conclusion that the "Nazi" *in limine* motion violated Rule 11, emphasizing that DC's connection to Germany was "unavoidably obvious," and "any discussion of World War II would be entirely irrelevant to this matter...."  DC filed the motion "perhaps in an attempt to prevent any mention of Plaintiff Elwood Kaplan's meritorious military service in the United States Army."

"Most Americans," the court reasoned, are willing to fight against any aggression, Nazi or otherwise, "yet thereafter ... [they are] willing to accept the

5

German people, German businesses, and even purchase [DC] cars. It is an insult to all Americans to suggest that they would harbor bias for generations."

In any case, the court further concluded, many of the other *in limine* motions were moot because plaintiffs had no intention of introducing the evidence in question, "and many were simply a re-argument of the same issues" the court had previously decided. The judge emphasized that attempting to bury one's opponent in paper "and increase the amount you can charge your client by making borderline and frivolous motions is precisely the sort of conduct that violates both the letter and the spirit of Rule 11."

DC's counsel, the court insisted, should have discussed the matters with plaintiffs' counsel and also with the court during the pretrial conference. Such "hardball" tactics lengthened the case. A sanction equal to the amount of time DC's counsel spent on "these motions *in limine*" would remind attorney Shapiro of his duty "to act in a professional and ethical manner."

While plaintiffs neither initiated nor encouraged the above-described Rule 11 proceedings, they have filed a brief on appeal. DC moves to strike it for lack of standing.[1]

---

[1] We deny the motion. Rule 11 does not provide for anyone to advocate for the sanctions-issuing judge on appeal. In that we benefit from hearing both sides of the story, we think it prudent to permit opposing counsel, as an officer of the court, to voluntarily fill in that gap. We therefore do not need

## II. ANALYSIS

The purpose of Rule 11 sanctions is to "reduce frivolous claims, defenses, or motions, and to deter costly meritless maneuvers." *Massengale v. Ray*, 267 F.3d 1298, 1302 (11th Cir. 2001). Courts assess such sanctions, then,

> (1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) when the party files a pleading *in bad faith for an improper purpose.*

*Id.* at 1301 (quotes and cites omitted; emphasis added); *Coker v. DaimlerChrysler Corp.*, 220 F.Supp.2d 1367, 1373 (N.D.Ga. 2002).

The rule incorporates an objective standard. *Donaldson v. Clark*, 819 F.2d 1551, 1556 (11th Cir. 1987). Hence, courts determine whether a reasonable attorney in like circumstances could believe his actions were factually and legally justified. *Riccard v. Prudential Ins. Co.,* 307 F.3d 1277, 1294 (11th Cir. 2002). We review Rule 11 sanctions under the abuse-of-discretion standard. *Id.*; *see also* 5A WRIGHT & MILLER: FEDERAL PRAC. & PROC. § 1337 (*Procedural Aspects of Rule 11 Motions; Due Process*) (Supp. 2002).

*Court-initiated* sanctions under Rule 11(c)(1)(B) do not involve the "safe harbor" provision contained in Rule 11(c)(1)(A). *In re Pennie & Edmonds LLP*, 323

---

to reach the issue of standing, and we commend plaintiffs' counsel for his effort.

F.3d 86, 89 (2d Cir. 2003). That provision ordinarily gives a lawyer or litigant 21 days within which to correct or withdraw the challenged submission. *Id.* at 89.

Because "no 'safe harbor' opportunity exists to withdraw or correct a submission challenged in a court-initiated proceeding," *id.,* Rule 11's drafters commented on Rule 11(c)(1)(B)'s compensating protections: The initiating court must employ (1) a "show-cause" order to provide notice and an opportunity to be heard; and (2) a higher standard ("akin to contempt") than in the case of party-initiated sanctions.[2]

Other circuits apply the "akin to contempt" rationale to court-initiated, Rule 11 sanctions. *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 151 (4th Cir. 2002); *Barber v. Miller*, 146 F.3d 707, 711 (9th Cir. 1998). Sua sponte Rule 11 sanctions, then, must be reviewed with "particular stringency." *Pennie*, 323 F.3d at 90; *MHC Inv. Co. v. Racom Corp.*, 323 F.3d 620, 623 (8th Cir. 2003); *Hunter*, 281 F.3d at 153;

---

[2]  That latter requirement led the *Pennie* majority to apply a "subjective good faith" standard (otherwise eliminated in favor of an objective standard by the 1993 Rule 11 Amendments) to the facts of that case. Analyzing, *inter alia*, Rule 11's structure and commentary, that court

> conclude[d] that where ... a sua sponte Rule 11 sanction denies a lawyer the opportunity to withdraw the challenged document pursuant to the "safe harbor" provision of Rule 11(c)(1)(A), the appropriate standard is subjective bad faith. In this case, the District Court accepted the firm's assertion that it acted in subjective good faith. We therefore vacate the sanction ruling.

323 F.3d at 87; *compare id.* at 93-102 (dissent contending that objective good faith standard applied).

8

*United National Insurance Co. v. R & D Latex Corp.*, 242 F.3d 1102, 1115 (9th Cir. 2001).

While we join those circuits in their "akin-to-contempt" interpretation, three reasons excuse us from resolving the related "*mens rea*" issue that split the *Pennie* panel. First, the judge himself intimated, at the pretrial conference, that he would not vigorously enforce the time limits for filing *in limine* motions. While DC violated the spirit of his "just so long as it's in sufficient time" reminder, the court's own actions in ruling on all nineteen motions by the start of trial demonstrates that DC in fact did file the motions in sufficient time, at least in the literal sense.

No doubt those late filings irritated and inconvenienced both the court and plaintiffs' counsel, but seven were moot and thus consumed an inconsequential amount of the court's time, while the remainder could have simply been denied as untimely, if not carried with the case and decided via contemporaneous objection at trial. DC's actions were abusive, but not "over the top," much less akin to contempt.

Second, judges can discourage such practices through more stringent rule enforcement *beforehand*, but that is not what the judge signaled here (not one of his orders cite M.D.FLA.LOC.R. 3.01(g), which is aimed at getting parties to confer and work out their differences before filing motions not otherwise excepted by that rule; nor did plaintiffs honor it).

9

Third, Nazi-era memories (and for some, lingering anger and resentment) continue to pervade our nation's mind-set. Americans forgive, but don't forget. *See In re Austrian and German Bank Holocaust Litig.*, 2003 WL 402795 (S.D.N.Y. 2/21/03) (unpublished); *In re Nazi Era Cases Against German Defendants Litig.*, 213 F. Supp.2d 439 (D.N.J. 2002), cited in B. Neuborne, *Preliminary Reflections on Aspects of Holocaust-era Litigation in American Courts*, 80 WASH.U.L.Q. 795, 834 (2002).

While DC's "Nazi" motion may have been overkill, it simply cannot be said to meet the contempt-of-court level standard set forth above. It was not outlandish for DC to suppose, in this high-dollar case, that plaintiffs' counsel might subtly if not overtly prey on juror biases.[3]

---

[3] As DC points out, it has happened elsewhere, and lawyers may sometimes reasonably fear juror bias arising naturally, without provocation by their opponents. *See LeBlanc v. American Honda Motor Co., Inc.*, 688 A.2d 556, 559 (N.H. 1997); *see also Tabchi v. Duchodni*, 2002 WL 31097934 (Pa.Com.Pl. 4/11/02) (granting new trial to Arab American family who received a post-9/11, zero-damages verdict in a vehicle accident case where jury was instructed that defendant was liable and clear weight of evidence established damages; a bomb-scare occurred during trial, and the court noted but legally could not consider anti-Arab bias disclosed by jurors post-trial, yet concluded that "illogic and passion" infected verdict) (unpublished), cited in *Balendran v. North Shore Medical Group, P.C.*, 756 N.Y.S.2d 454, 455 (N.Y.A.D. 2 Dept. 2003) ("The plaintiff's contention that the judgment should be reversed and a new trial granted because the jury verdict was influenced by ethnic prejudice is unpreserved for appellate review. In any event, his contention is speculative and, therefore, without merit").

As judges, we are constantly reminded of bias and fear of same by the Title VII, national-origin based cases that flow through federal court dockets. And on the obverse side of this historic-memory coin, a November 2000 editorial from The Milwaukee Journal Sentinel online cites American WWII internment of Japanese citizens, then points out "that at least 11,000 German-

DC also complains that the district court failed to enter a show cause order and otherwise comply with Rule 11's formal requirements. While formal compliance with Rule 11(c)(1)(B) is the ideal, *see Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 767-68 (4th Cir. 2003), we apply a flexible standard, *Riccard,* 307 F.3d at 1294 n. 14, so in many cases substantial compliance may suffice. *See Precision Specialty Metals, Inc. v. United States*, 315 F.3d 1346, 1354 (Fed.Cir. 2003).

We need not say whether a written show cause order was required here because of the result we reach above on the "Nazi" motion, and because we agree with DC that there is a material variance between the court's oral Rule 11(c)(1)(B) notice (localizing the court's complaint to the "Nazi" motion) and the sanction imposed (encompassing non-"Nazi," *in limine* motions). Those procedural grounds alone warrant appellate relief.

## III.  CONCLUSION

We therefore ***REVERSE*** the district court's Rule 11 order and ***REMAND*** this case. We direct the district court to refund the Rule 11 sanctions money that DC paid to the district court. In light of this result, it is not necessary to reach the remainder of DC's arguments.

---

Americans, some from Wisconsin, were also put in labor camps for the same flimsy reason." www.jsonline.com/ news /editorials /nov00/german-edit113000.asp.  The point of many *in limine* motions, and corresponding judicial instructions, is to prevent memory-based biases from contaminating jury deliberations.  The courts won't crumble from an occasional "overkill" motion like DC's.