**Harold A. JOHNSON, Plaintiff,**

**v.**

**Anne BARNES, et al., Defendants.**

**No. 203CV130.**

United States District Court, S.D. Georgia, Brunswick Division.

Sept. 17, 2003.

Harold A. Johnson, Brunswick, GA, Pro se.

John C. Jones, Sr. Asst. Atty. Gen., SW Atlanta, GA, for defendants.

### AMENDED ORDER

EDENFIELD, District Judge.

■ Some *pro se* litigators get it in their mind that, if they lose a case in state court, they can simply run down to the nearest federal court and "undo" the result, evidently believing that federal district courts have some sort of appellate power to overrule state courts.[1]

That's essentially what plaintiff Harold A. Johnson did in *Johnson v. Lomas Mtg. USA, Inc.*, 291CV241 (S.D.Ga. Complaint filed 10/15/91), when he asked this Court to "deny full faith and credit to" (hence, neutralize, or vacate) a 1988 Florida state court judgment of foreclosure on property in which his mother was alleged to have held an interest. 291CV241 doc. # 1 at 3.

Dismissing that Complaint with prejudice, this Court explained that Johnson could seek relief, if at all, within the Florida court system, not here. *See id.* doc. # 45 (2/20/92 filed judgment granting defendant Lomas's motion to dismiss Johnson's case against it on, *inter alia,* collateral-estoppel and failure-to-state-a-claim grounds); *see also id.* doc. # 44 (Order noting Johnson's then-pending litigation in *Johnson v. Lomas Mtg. USA,* 201 Ga.App. 562, 565, 411 S.E.2d 731 (1991) (upholding dismissal of Johnson's abusive litigation claim against Lomas and imposing a $300 frivolous appeal sanction)).

This Court then further explained to Johnson that his action was "patently frivolous and wholly without merit," doc. # 44 at 7, but he did not get the message. In fact, after he frivolously moved for a "new trial" four days later, doc. # 47, the Court barred him from filing further pleadings with this Court. Doc. # 51 at 2.

Still, Johnson did not get the message. First, he sought to litigate in the Florida courts thereafter, but (not surprisingly) unsuccessfully. Doc. # 67 at 1. Second, he returned to this Court in 1996 with a facially frivolous Rule 60(b)(6) motion, asking the Court to vacate its 1992 judgment. Doc. # 54. For good measure, he moved for "Rule 11 Sanctions," doc. # 62, and for oral argument. Doc. # 64.

After noting his then 8 year litigation track record, which included an unsuccessful appeal of this Court's 1992 judgment and his unsuccessful return to the Florida courts, the Court denied his motion and pointed out that Johnson was "making a nuisance of himself...." Doc. # 67 at 2. The Court then directed the Clerk "to refuse any further filings from Johnson except for those consistent with an appeal of this Order." *Id.*

---

1. Of course, they do not. *See, e.g., Siegel v.* *LePore,* 234 F.3d 1163, 1172 (11th Cir.2000).

Of course, that last directive was imprudent because it is unrealistic to expect the Clerk to, year after year, maintain a "hotlist" of serial filers, then sift myriad filings each week to interdict what Johnson has now just filed, some 7 years later: an entirely new lawsuit derived from the same can of worms that this Court thought it forever buried back in 1996.

During those (1991–present) years, Johnson continued his non-stop litigation in the Florida courts. A 1997 Florida court opinion explains:

> Harold A. Johnson petitions this court for a writ of prohibition. In 1988, after this court had affirmed a nonfinal appeal but before the mandate was issued, the trial court entered a Summary Judgment of Foreclosure. Since 1988, the petitioner has argued that the judgment was entered at a time when the trial court did not have jurisdiction. This is at least the fifth time that he has made this same argument to this same court. We decline to issue the writ because we are bound by the law of the case. Whether it was correctly decided would depend upon the nature of the nonfinal order under review at the time. Under Florida Rule of Appellate Procedure 9.130(f), trial courts are divested of jurisdiction only to the extent that their actions are under review by an appellate court, and the lower court has jurisdiction to proceed with matters not before the appellate court. At this point its correctness, *vel non*, is academic because this court has already determined that the trial court had jurisdiction to enter the order. *Johnson v. Harris*, 645 So.2d 96 (Fla. 5th DCA 1994). We will not revisit this issue again.

*Johnson v. Circuit Court*, 686 So.2d 723, 723–24 (Fla. 5th DCA 1997) (cites and footnote omitted). In a footnote, that court cited Johnson's prior litigation as of 1997:

> The issue was previously argued in this court in *Johnson v. Lomas & Nettleton Co.*, 557 So.2d 48 (Fla. 5th DCA 1990); *Johnson v. Harris*, 645 So.2d 96 (Fla. 5th DCA 1994); *Johnson v. Lomas & Nettleton Co.*, No. 95–1207, 670 So.2d 963 (Fla. 5th DCA 1996); *Johnson v. Circuit Court, Eighteenth Judicial Circuit*, No. 95–3319 (Fla. 5th DCA, Feb. 8, 1996) (petition dismissed by unpublished order). It has also been argued in the Florida Supreme Court in *Johnson v. Fifth District*, 662 So.2d 342 (Fla.1995) and *Johnson v. Fifth District*, No. 84,-491, 649 So.2d 869 (Fla.1995).

*Id.* at 724.

This Court's own perusal of the case law has uncovered these additional cites (not one of which evidences any litigation success): *Johnson v. C.I.R.*, 2001 WL 417096 at *1 (U.S.Tax Ct.2001) (unpublished) (denying Johnson's claimed "due process theft" tax deduction); *Johnson v. Lomas & Nettleton Co.*, 672 So.2d 542 (Fla.1996) (summary dismissal); *Johnson v. Lomas & Nettleton, Inc.*, 577 So.2d 1337 (Fla.App. 3 Dist.1991) (summary dismissal); *Johnson v. Lomas & Nettleton Co.*, 563 So.2d 632 (Fla.1990) (summary dismissal); *Johnson v. Lomas and Nettleton Co.*, 562 So.2d 346 (Fla.1990) (summary dismissal); *Johnson v. Lomas Mortg. U.S.A., Inc.*, 560 So.2d 233 (Fla.1990) (summary dismissal); *Johnson v. Lomas & Nettleton Co.*, 537 So.2d 569 (Fla.1988) (summary dismissal); *Johnson v. Lomas and Nettleton Co.*, 534 So.2d 400 (Fla.1988) (summary dismissal); and *Johnson v. Lomas and Nettleton Co.*, 530 So.2d 315 (Fla.App.1988) (summary dismissal).

Exhibits to Johnson's latest Complaint shows that, over the years, he's also continued litigating within the *Georgia* state courts. *See* 203CV130 doc. # 1 attached pleadings from, and citing to, *Johnson v.*

*Equicredit Corp.,* 238 Ga.App. 380, 517 S.E.2d 353 (1999), where Johnson sued the purchasers of his foreclosed Florida property and asked the court, as he did here, "to deny full faith and credit to" the Florida foreign judgment of foreclosure and find that judgment void for lack of jurisdiction. *Id.* at 380, 517 S.E.2d 353. That court reached the same result as this Court. *Id.* at 381, 517 S.E.2d 353.

Unsuccessful in his *Equicredit* case, Johnson concocted a new line of attack in 2000 and sought to re-litigate the foreclosure issue "in his capacity as Trustee." *Johnson v. Carter,* No. 01–00661 at 3 (Glynn Cty St. Ct. Order filed 12/26/01, copy attached to Johnson's Complaint in this case, 203CV130, as exh. G). He cynically/pathetically executed a deed purporting to convey the long-foreclosed property (hence, property which he no longer owned) "from himself as settlor to himself as trustee, and [then] recorded it in the [local county] property records...." *Id.* This caused the property's post-foreclosure owner, G.D. Carter, to bring a quiet title action against him in Florida court, which Johnson then removed to federal court. *Id.*

Validating the very essence of *chutzpah,* Johnson then wrote Carter and threatened him with "an abusive litigation suit in *Georgia* if [Carter] did not dismiss the [*Florida*] quiet title action." *Id.* at 3–4 (emphasis added). Johnson then filed that threatened action in Georgia state court, seeking a declaratory judgment that the Florida foreclosure judgment is null and void. *Carter* at 1. That (Georgia) court granted Carter and his title insurer's motion to dismiss on res-judicata grounds and, unsurprisingly, Johnson moved for a new trial, in response to which Carter and his insurer moved to dismiss for lack of subject matter jurisdiction, as well as for O.C.G.A. § 9–15–14 attorney's fees. *Id.* at 2.

The *Carter* court granted the dismissal motion and awarded defendants $28,703.95 in § 9–15–14 attorney fees against Johnson. *Id.* at 9; *see also id.* at 8 n. 3 (collecting 16 *Johnson* cases litigated in the *state* courts, including *Johnson v. Equicredit Corp.,* 706 So.2d 290 (Fla, 1st DCA 1998); *Johnson v. Equicredit Corp.,* 719 So.2d 287 (Fla.1998), and noting "extensive federal litigation related to the same dispute").

Johnson unsuccessfully appealed that decision. *Johnson v. General D. Carter,* A02A1762 (Ga.App.3/27/03) (unpublished) (copy attached as "exh. A" to the Complaint in this action). Anne E. Barnes, John H. Ruffin, Jr. and A. Harris Adams sat on the three-judge panel in that case. Stephen G. Scarlett was the *Carter* trial court judge.

In *this* action, Johnson sues *all* of those judges, plus Carter's attorney, under 42 U.S.C. § 1983. He characterizes this case "as an action for damages against judges of the [Georgia] Court of Appeals of Georgia for acting against Johnson/individual in clear absence of all jurisdiction. See petition (H), title to land issue." 203CV130 doc. # 1 at 2.

■ Johnson basically tries to exploit his "trustee" trick here by insisting that, since he sued the *Carter* defendants only as a "trustee," the trial and appellate courts never had personal jurisdiction over him *individually,* so they (and Carter's counsel) must now pay him $1.5 million in damages for treating him as an *individual* before that court. *Id.* at 2–5; *see also id.* at 3–4 (requesting that Judge Scarlett be referred for "psychiatric treatment" to "ascertain his capability to continue in office").

Suffice it to say that Johnson's latest action is patently frivolous. Furthermore, the record shows that Johnson has been litigating, in one form or another, the same

issue (intermittently re-presented in slightly different forms) virtually nonstop since 1988. He is, to put it mildly, a litigation menace to society. It is therefore time to end his litigation war once and for all.

Accordingly, the Court *DISMISSES PLAINTIFF'S COMPLAINT WITH PREJUDICE.*

 In addition, the Court directed plaintiff to show cause,[2] within 21 days of the date that the original (un-amended, 9/3/03 version) of this Order was served, why the Court should not re-enter this Order (as an "Amended Order") bearing the following conclusion, set forth *infra*, permanently enjoining and monetarily sanctioning him.

Predictably, Johnson has responded with two, facially frivolous motions: (1) to recuse the undersigned and transfer this case to the chief judge of this district, doc. # 6; and (2) to dismiss this case for lack of personal jurisdiction over him. Doc. # 5.

Meanwhile, the above-mentioned judges, evidently unaware of this Court's last Order, move the Court to dismiss them from this action. Doc. # 7.

The Court *DENIES* Johnson's motions (doc. ## 5–6) on the merits, and *DENIES* the defendant-judges' motion to dismiss (doc. # 7) as moot. In light of the decade-and-a-half litigation war recounted above, including the facially bogus legal artifice ("trustee") plaintiff employed, the Court finds that Johnson has engaged in conduct akin to contempt of the judicial system itself, defiling the very temple of justice with unrelenting, menacingly frivolous litigation.

Pursuant to its inherent power and its authority under F.R.Civ.P. 11(c)(1)(B), then, the Court *PERMANENTLY ENJOINS* Harold A. Johnson from, either directly or indirectly (including, but not limited to, by forming trusts, corporate entities, or any other device or artifice for the purpose of in any way) litigating the

---

**2.** The Court is imposing sanctions upon plaintiff under both its inherent power and under F.R.Civ.P. 11. Where a party opponent files a Rule 11 motion, Rule 11(c)(1)(A) allows an offending party a 21–day "safe harbor" within which to correct or withdraw his Rule 11 violative filing and thus avoid Rule 11 sanctions. *See Kaplan v. DaimlerChrysler, A.G.,* 331 F.3d 1251, 1255 (11th Cir.2003). If not, Rule 11 sanctions may be awarded upon a showing that the violator filed an objectively unreasonable case, motion, etc. *In re Pennie & Edmonds LLP,* 323 F.3d 86, 90 (2d Cir. 2003).

But when a court *sua sponte* invokes the rule under Rule 11(c)(1)(B), it "must employ (1) a 'show-cause' order to provide notice and an opportunity to be heard; and (2) a higher standard ('akin to contempt') than in the case of party-initiated sanctions." *Kaplan,* 331 F.3d at 1255. Johnson therefore must should show this Court that he did not file the instant case, *objectively* speaking, in bad faith. *See id.* at 1255 n. 2; *see also* 5A WRIGHT & MILLER FEDERAL PRAC. & PROC. § 1337 (*Procedural Aspects Of Rule 11 Motions: Due Process*) (2003).

*Subjective* bad faith must be shown in Second Circuit, Rule 11(c)(1)(B) cases. *See Pennie,* 323 F.3d at 91–92 (applying a contempt-like, *mens rea* standard). The *Kaplan* court saw no need to decide whether that standard applies in the Eleventh Circuit. *Kaplan,* 331 F.3d at 1255 n. 2. Out of an abundance of caution, however, the Court will assume that it is required in this case. Johnson, then, must show the Court that he did not file this action in subjective bad faith. The Court additionally notes that

[a] finding of bad faith is also required for an award of sanctions under the Court's inherent power. *In re Pennie & Edmonds LLP,* 323 F.3d 86, 90 (2d Cir.2003). In fact, the "threshold finding required to justify sanctions under the inherent powers doctrine is extremely high. The court must find that the very temple of justice has been defiled by the sanctioned party's conduct." *U.S. v. Seltzer,* 227 F.3d 36, 41 n. 2 (2d Cir.2000) (internal quotations and citation omitted).

*Fleet National Bank v. Weightman Group,* 2003 WL 21781967 at * 4 (S.D.N.Y. June 19, 2003) (unpublished).

"Florida foreclosure" matter any further in *any* court. *See Mazur v. Woodson,* 191 F.Supp.2d 676, 684 (E.D.Va.2002) (State law claims of surviving husband and children against the brother of husband's deceased wife, arising from the brother's burial of the wife's body in Virginia without notice to the husband and children, who wished to bury the body in New Jersey, were frivolous and not warranted under existing law or by a nonfrivolous argument for a change in the law, and warranted sanctions in the form of a pre-filing injunction as to any subsequent civil litigation they wished to initiate in the district court, in view of previous federal and state court actions also filed by them against the wife's brother).

The Court also *sua sponte* imposes a $5,000.00 sanction against plaintiff. *See Industrial Risk Insurers v. M.A.N. Gutehoffnungshutte,* 141 F.3d 1434, 1448 (11th Cir.1998) (In order for Rule 11 sanctions to be imposed for excessive relitigation of issue already decided by court, disputed issue must have been clearly decided by court's earlier orders, and counsel's relitigation of issue must clearly offer no meritorious new arguments); *id.* ("An improper purpose may be shown by excessive persistence in pursuing a claim or defense in the face of repeated adverse rulings"); *St. Amant v. Bernard,* 859 F.2d 379, 384 (5th Cir.1988) ("Repeat litigation of identical claims over identical subject matter may support an inference that the litigation was meant to harass opposing parties"); *Lewin v. Cooke,* 95 F.Supp.2d 513, 527 (E.D.Va.2000) (Monetary sanctions under Rule 11 would be imposed against represented plaintiff for filing of frivolous suit against defendants, where plaintiff was attorney and directly assisted his counsel with legal research, drafting pleadings and preparation of court documents, claims asserted in suit were substantively identical to those which had previously been dismissed on merits, and claims and litigation history indicated improper purpose to harass defendants and further plaintiff's quest for revenge), *aff'd.,* 28 Fed. Appx. 186, 2002 WL 15376 (4th Cir.), *cert. denied,* 537 U.S. 881, 123 S.Ct. 90, 154 L.Ed.2d 137 (2002). It is obvious that the *Carter* court's $28,703.95 sanction did not deter him.

That $5,000.00 sanction is immediately payable to the "Clerk of Court, Southern District of Georgia." The Court will add a zero for every new "foreclosure" lawsuit Johnson files here or elsewhere. Johnson is granted leave to file with this Court *only* (1) a Notice of Appeal (*i.e.* he is free to appeal *this* Order and Judgment); and (2) any legitimate, appeal-related pleadings.

Finally, the Court is fully publishing this opinion in the national reporter system so that any future Johnson litigation targets may move this Court to impose contempt sanctions (if monetary sanctions do not work then the Court will consider a one-year incarceration) against him for violating this re-litigation injunction.