[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-11750
Non-Argument Calendar
_____

D.C. Docket No. 6:14-cv-00032-RBD-DAB

DANUBIS GROUP, LLC,
a Florida Limited Liability Company,

Plaintiff - Counter Defendant,

KEVIN CHRISTOPHER AMBLER,

Interested Party - Appellant,

versus

LANDMARK AMERICAN INSURANCE COMPANY,
a foreign corporation,

Defendant - Counter Claimant –
Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(April 17, 2017)

Before TJOFLAT, WILLIAM PRYOR and JILL PRYOR, Circuit Judges.

PER CURIAM:

Attorney Kevin Ambler appeals the district court's imposition of sanctions against him for misconduct related to discovery and his pre-trial investigation of facts in the complaint. On appeal, Ambler argues that the district court failed to properly apprise him of the possibility he could be sanctioned, improperly imposed Rule 11 sanctions based on a complaint filed in state court, and erred in determining the amount of monetary sanctions to be levied against him. After careful review, we affirm the district court's determination that monetary sanctions against Ambler were appropriate, but we vacate the district court's determination of the amount and apportionment of the sanctions and remand with instructions.

## I.    BACKGROUND

The short version of this case is that Ambler appeals the district court's imposition of monetary sanctions for gross dereliction of his duties and for recklessly becoming an agent of his client's insurance fraud scheme. The long version is as follows.

## A.    Initial Discovery Deficiencies

Danubis Group, LLC—via Ambler, its counsel—filed a breach of contract action against Landmark American Insurance Company, alleging that Landmark had underpaid a claim for loss of rent on a commercial property. The complaint

2

alleged the following:  Danubis had a five year commercial lease agreement with Richard MacKizer, beginning on November 1, 2009, at a rental rate of $8,500 per month.  MacKizer intended to open a restaurant on the property.  However, two weeks before the lease began, the property was damaged from theft and vandalism, rendering it unusable as a restaurant.  MacKizer subsequently surrendered possession of the property to Danubis in December 2009.  Danubis was unable to find a new occupant until June 2010, and only at the lower rate of $7,000 per month.

The complaint further alleged that Landmark took an unjustifiably long time to reimburse Danubis for lost rent and damage to the property and that it reimbursed Danubis only partially.  Danubis alleged that in filing its claim with Landmark it provided Landmark with the June 15, 2010 affidavit of Gary Metzger. The affidavit—which was also attached to the complaint—stated that Metzger, along with MacKizer, took possession of the property on September 16, 2009, with a month-to-month lease set to begin on November 1, 2009 at a rate of $8,500 per month.  The affidavit also stated that Metzger and MacKizer placed $100,000 in escrow with attorney Brian Herzig for the tenancy, and that the tenancy ended in December 2009 as a result of the theft and vandalism damage.  The affidavit was signed by Metzger and notarized.  Ultimately, Danubis's complaint asked for

3

$156,000 in damages for lost rent, plus pre-judgment interest, as well as additional compensation for Danubis's equipment loss.

So began a series of missteps by Danubis and Ambler. Landmark removed the case to the district court, but in doing so only alleged Danubis's state of residence, rather than its citizenship. The district court *sua sponte* ordered Landmark to file an Amended Notice of Removal properly establishing diversity jurisdiction by a certain date. Landmark engaged in repeated efforts to obtain the requisite citizenship information from Danubis—via Ambler—to no avail. Consequently, Landmark asked the court for an extension of time to file its amended notice. In doing so, Landmark attached its correspondence with Ambler, which included an interrogatory on Danubis's citizenship, requests for admission concerning the same, an initial letter asking Ambler to expedite responding to the discovery requests to enable Landmark to comply with the district court's order, and a follow-up letter detailing Landmark's efforts to contact Ambler. The second letter indicated that Landmark had left Ambler messages and sent him correspondence concerning Danubis's citizenship, but had received no response.

The district court granted Landmark's motion for an extension of time and ordered Ambler to respond to Landmark's discovery requests. The court admonished Ambler for his lack of communication: "The Court takes seriously Counsel's responsibility to return calls, correspondence and requests for

cooperation and will take a dim view of any demonstrated failures in that regard." Disc. Order, Doc. 16.[1]  Notwithstanding the court's order and warning, Ambler failed to respond to Landmark's discovery requests by the court's deadline. Landmark filed for a second for extension of time and later supplemented its motion, noting that Danubis and Ambler had still not responded to Landmark's discovery requests.  The court then scheduled a status conference.

Ambler appeared at the status conference and apologized for his lack of responsiveness and violation of the court order, explaining that personal issues prevented him from responding to Landmark's discovery requests.  The court ordered Danubis to respond to Landmark's discovery requests within seven days, a deadline Danubis met.  In total, Ambler's failure to respond and violation of court order with regard to jurisdictional discovery resulted in a two month delay in the case.

With diversity jurisdiction established, the court entered a Case Management and Scheduling Order setting three deadlines:  for providing initial disclosures pursuant to Federal Rule of Civil Procedure 26, for amending pleadings, and for the close of discovery.  The order warned that the court "will impose sanctions on any party or attorney . . . who [] fails to comply with this order."  Case Management Order, Doc. 36 at 12-13.  It further noted that the "[s]anctions may

---

[1] Citations to "Doc." refer to docket entries in the district court record in this case.

include but are not limited to an award of reasonable attorney's fees and costs, the striking of the pleadings, the entry of default, the dismissal of the case, and a finding of contempt of court." *Id.*

Landmark timely served discovery requests on Danubis. On the day Danubis's responses were due, Ambler moved for a 30 day extension on Danubis's behalf, which the magistrate judge denied. Instead, the magistrate judge admonished Ambler and ordered Danubis to respond to Landmark's discovery requests within 14 days. Ambler and Danubis continued to ignore Landmark's requests and the court's orders. Landmark therefore filed a series of motions to compel responses to its discovery requests and Danubis's initial disclosures, which were now five months late.

In response to Landmark's motions, the magistrate judge entered an order to show cause demanding that Ambler and Danubis explain why the action should not be dismissed for failure to prosecute. In response to a separate motion filed by Landmark, the magistrate judge warned: "Plaintiff is reminded that failure to provide discovery and cooperate in the process is not without consequence, and the Court will not hesitate to impose sanctions (which may include an award of fees and expenses in addition to dismissal of the case) to the extent Plaintiff's conduct hinders the orderly flow of discovery." Landmark Disc. Extension Order, Doc. 63 at 2.

Danubis filed no response to any of Landmark's motions to compel, but did respond to the show cause order. The response contended that Danubis had timely served objections to Landmark's discovery requests, Danubis did not need to serve initial disclosures because Landmark already had all relevant documentation before the litigation began, and Ambler was unresponsive because he was involved in another matter that monopolized his time. Ambler also attached new discovery responses that were unverified and unsigned by his client.

The magistrate judge determined that although Danubis and Ambler were "dilatory in prosecuting this action," they had not abandoned it. Mot. to Compel Order, Doc. 70 at 2. The magistrate judge concluded however that because Danubis had acted in bad faith, sanctions were warranted. Specifically, the order noted that: (1) Danubis/Ambler's belief that Landmark already possessed all relevant documents did not obviate the requirement that Danubis serve initial disclosures, (2) Danubis's failure to respond to Landmark's motions to compel rendered Danubis's objections to Landmark's discovery requests waived or overruled, (3) tendering unsworn discovery responses failed to comply with the Federal Rules of Civil Procedure, and (4) Ambler failed to take responsibility for his deficiencies throughout the litigation. The magistrate judge granted each of Landmark's motions to compel, setting deadlines for Danubis's compliance. The magistrate judge cautioned that "failure to comply with the terms of this Order may

7

result in the imposition of sanctions, which may include the striking of pleadings and dismissal of the claim." Mot. to Compel Order, Doc. 70 at 5 (emphasis omitted). The magistrate judge also awarded Landmark costs associated with each motion to compel under Federal Rule of Civil Procedure 37.

In the same order, the magistrate judge warned Ambler that any future misconduct would result in further sanctions:

> [T]he Court admonishes Plaintiff's counsel for conduct that is below the standard of practitioners in this Court. Counsel has a professional responsibility to his client and this Court to meet deadlines, respond to opposing counsel, and cooperate with the discovery process. His failure to do so has resulted in delay, added costs, and the expenditure of judicial time and effort to direct compliance with those obligations. Counsel is ethically obligated not to take on more than he can handle. If counsel is repeatedly too busy to timely respond to discovery, meet required deadlines, or communicate with opposing counsel, he is too busy. Counsel is cautioned that further derelictions of duty in this matter will result in appropriate, and unpleasant, consequences.

Mot. to Compel Order, Doc. 70 at 5 (emphasis omitted).

Notwithstanding the magistrate judge's clear warning, things only got worse. Landmark filed a series of motions seeking relief from its affirmative discovery obligations, pointing out myriad irregularities in Danubis's discovery responses. Although Danubis's company representative, Borivoje Radulovic, appeared for a deposition, he relied on a series of documents to answer Landmark's counsel's questions—documents that Danubis and Ambler had not produced to Landmark prior to the deposition. Moreover, an insurance adjuster who worked on Danubis's

8

claim responded to a subpoena by noting that he had no records of his interactions with Danubis, aside from his firm's contract with Danubis and a letter signed by Radulovic indicating that he had taken the adjuster's file.   On the day of the adjuster's deposition, Ambler produced the missing file—consisting of approximately 450 pages—which had been in Radulovic's possession since before the inception of the litigation.

Similarly, at MacKizer's deposition, Ambler used and marked as exhibits documents that had never been produced to Landmark.  In addition, in an unverified interrogatory response Danubis claimed that it was unable to find any contact information for Gary Metzger, whose 2010 affidavit was attached to its complaint.  Landmark also claimed that Danubis served discovery responses via a link to an inaccessible Dropbox account.  The magistrate judge noticed a discovery conference to address these irregularities, directing counsel to appear in person and warning that the court "will not hesitate to impose sanctions on any party or counsel found to be hindering the orderly flow of discovery in this case."  Disc. Hr'g Notice, Doc. 79.  In response to Landmark's motions, Danubis admitted to a number of the irregularities and denied others, providing various excuses and explanations.

**B.    Landmark's Motion to Dismiss**

The day before the scheduled discovery conference, Landmark filed a motion to dismiss Danubis's complaint for "Fabrication of Evidence, Fraud Upon the Court, Egregious Discovery Practices, and For Violation of the Court's Discovery Order."  Landmark's Mot. to Dismiss, Doc. 83 at 1.  The motion asserted that at his deposition, MacKizer denied that either he or Metzger ever were tenants at the property in question.  It further contended that on the day of MacKizer's deposition, Ambler used an errata sheet to make substantive changes to Radulovic's earlier deposition testimony and notarized the errata sheet himself. Moreover, it claimed that although Danubis had previously denied having any contact information for MacKizer, Danubis produced new documents at MacKizer's deposition containing MacKizer's e-mail address.

Most importantly, the motion explained that Landmark had tracked down Metzger, who provided Landmark with a new affidavit indicating that his 2010 affidavit was false.  The new affidavit stated that Metzger viewed the property, found it lacking, and declined to enter into a lease agreement with Radulovic or Danubis.  Metzger further claimed he never took possession of the property or obtained keys to it, and declared that his signature on the 2010 affidavit was a forgery.

10

The magistrate judge ordered an evidentiary hearing on Landmark's motion, instructing the parties to locate and subpoena any relevant witnesses including Metzger, MacKizer, and Radulovic. The magistrate judge informed the parties and attorneys that he may impose sanctions for misconduct, warning:

> Due to the nature of the issues raised in the motion and considering the possible personal and professional consequences that may result from a finding that fraud was committed in this case, the potential that counsel may, themselves, be called upon to testify, and the possibility of conflicts arising between client and counsel, **counsel are advised to consider the appropriateness of having separate representation at the hearing and whether their clients may need independent representation.**
>
> To the extent the evidence supports a finding that a party, witness or counsel has violated the Federal Rules of Civil Procedure or any Order of this Court, appropriate sanctions will be considered and imposed, which may include striking of pleadings and/or the imposition of monetary or other sanctions. **All parties and counsel are further advised** that, should the evidence support a finding that any party, witness or counsel participated in any way in the perpetration of a fraud in this matter, the Court will consider the full measure of sanctions available, including, if appropriate, referral to the United States Attorney or other appropriate authorities for investigation and/or prosecution.

Evidentiary Hr'g Order, Doc. 88 at 1-2.

## C.    The Hearing

At the evidentiary hearing, Metzger—who claimed he had not been contacted by Ambler prior to the filing of the complaint—testified that although he had looked at the property, he never leased it. He further testified that the affidavit he provided to Landmark was accurate, and that he did not recall executing the

2010 affidavit that indicated he had leased the property from Danubis. Nonetheless, the notary listed on the 2010 affidavit confirmed that her log shows Metzger appeared and executed that affidavit.

MacKizer confirmed Metzger's testimony that there was never a lease agreement for the property between himself, Metzger, and Danubis and that he and Metzger never took control of the property. Like Metzger, MacKizer had not been contacted by Ambler prior to the initiation of this lawsuit. A friend of Radulovic's, Charles Giannetto, testified that in 2009, as a favor to Radulovic, he called Herzig—the attorney whose firm was, per the 2010 Metzger affidavit, holding $100,000 in escrow to secure the lease of the property. On the call, Herzig purportedly confirmed the existence of the escrow account to Giannetto, despite the fact that Herzig did not know the identity of the caller. On the contrary, Landmark submitted an affidavit from an attorney at Herzig's former firm indicating that no such escrow account existed and that Metzger was never a client of the firm.

Radulovic testified that there was an oral lease agreement between Danubis and Metzger and that Metzger was given keys to the property, which he returned after the vandalism occurred. Radulovic also testified that Metzger must be "lying" or "mentally ill" to say that no lease existed. He speculated that Metzger

12

was lying out of spite because Radulovic declined to give him a kickback from the proceeds of his insurance claim on the property.

Ambler provided an affidavit for the court's consideration. He incorporated two of his responses to Landmark's prior discovery motions, as well as his initial response to Landmark's motion to dismiss, which attacked Metzger's credibility. Ambler also acknowledged that he made a "clerical error" by listing MacKizer in the complaint, when the purported lease was between Danubis and Metzger. Nonetheless, Ambler denied knowingly filing any false or misleading evidence.

## D.    The Ruling

After hearing from these witnesses and several others, the magistrate judge made factual findings. The magistrate judge found that the 2010 Metzger affidavit was a sham and that although Metzger and MacKizer had viewed the property, there was no lease, and no money was ever placed into escrow to secure a lease. The magistrate judge found that to the extent Radulovic claimed there was an oral five year lease agreement between Danubis and Metzger, "the uncontradicted evidence [was] that Metzger was never charged for (and did not pay) 'rent' and never paid a dime for utilities, deposits, insurance or other indicia of tenancy." First R. & R., Doc. 119 at 25.

This being the case, the magistrate judge found that in 2009 "Radulovic colluded with Metzger in an attempt to convert their potential business relationship

13

into an existing lease and convince the insurance company that there was a claim for loss of rent.  When Radulovic did not cooperate with a 'kickback,' Metzger recanted." *Id.* at 26.  In essence, the magistrate judge found that Radulovic teamed up with Metzger to defraud Landmark into paying out an insurance claim for non-existent lost rent.

The magistrate judge determined that in pursuing this litigation on Danubis's behalf, Ambler became an unwitting agent in Radulovic and Metzger's scheme. The magistrate judge assessed various bases for sanctioning Ambler.  First, the magistrate judge concluded that Ambler violated Rule 11 of the Federal Rules of Civil Procedure by filing a false complaint.  Although the magistrate judge found that Ambler was unaware that he was filing a false complaint, the magistrate judge found that:

> Ambler *did not care* whether the allegations were true or not.  The record shows that [Ambler] did not perform even the most perfunctory of investigations prior to filing his Complaint.  He did not speak to Mr. MacKizer or Mr. Metzger, despite making affirmative allegations about their connection to the Property; he did not review the Public Adjuster's file or his own client's files (as they were first "discovered" well into the litigation); and, indeed, he did not even obtain his client's review of the Complaint before it was filed.  It appears, at best, that Mr. Ambler took a few spotty and self-serving conclusions of his client as gospel, attached a copy of an Affidavit drafted by his client and signed by a man Plaintiff contends is a liar, and threw together a complaint, perhaps with the hope that Defendant would settle.  The Court finds this to be objectively and subjectively unreasonable.

*Id.* at 28.

14

The magistrate judge further explained that Ambler's reckless disregard for the truth extended beyond the pleadings, as Ambler arguably hindered Landmark's attempts to locate Metzger and MacKizer by failing to produce documents in his client's possession that contained contact information for MacKizer. *Id*. The magistrate judge thus concluded that all the procedural requirements for Rule 11 sanctions were met and that imposition of such sanctions was warranted.

Second, the magistrate judge determined that sanctions against Ambler were appropriate pursuant to Rules 16(f) and 37(b) of the Federal Rules of Civil Procedure, based on Ambler's repeated failure to comply with discovery deadlines. Sanctions on these bases were warranted because Ambler's failure to comply was not due to negligence, but rather due to his belief that compliance was unnecessary because the case involved a "fairly small insurance claim." *Id*. at 29. Third, according to the magistrate judge, Ambler's behavior throughout the litigation—including his failure to comply with discovery deadlines, failure to respond to inquiries from opposing counsel, and failure to respond to Landmark's motions to compel—unreasonably and vexatiously multiplied the court's proceedings, justifying sanctions under 28 U.S.C. §1927. Fourth, the court explained that it was within its inherent power to control and discipline attorneys, and that it can do so even in the face of procedural rules that govern the same conduct.

15

Ultimately, the magistrate judge concluded that Danubis's and Ambler's behavior throughout the course of the litigation warranted dismissal of Danubis's complaint.  The magistrate judge further determined that monetary sanctions against Danubis and Ambler were appropriate and instructed Landmark to file a motion identifying the specific costs and fees it sought.  The district court adopted the magistrate judge's report and recommendation after Ambler and Danubis failed to timely object.

Soon thereafter, Landmark filed a notice indicating that on August 28, 2014, amid discovery, Landmark had made an offer of judgment to Danubis pursuant to Florida Statutes § 768.79, Florida Rule of Civil Procedure 1.442, and Federal Rule of Civil Procedure 68.  The offer of judgment provided that Landmark would pay Danubis $2,500.  Under § 768.79(6)(a), "[i]f a defendant serves an offer which is not accepted by the plaintiff, and if the judgment obtained by the plaintiff is at least 25 percent less than the amount of the offer, the defendant shall be awarded reasonable costs, including investigative expenses, and attorney's fees . . . incurred from the date the offer was served."  Fla. Stat. § 768.79(6)(a).

Landmark filed a motion seeking $64,037 in attorney's fees, $9,649.49 in costs, and $3,208.73 in other expenses that it incurred in preparing its motion to dismiss and participation in the concomitant evidentiary hearing.  Landmark also sought $72,577.15 in attorney's fees, $3,083.73 for costs, and $40,575.67 for other

16

expenses it incurred during the remainder of the litigation. In response, Ambler filed an affidavit from a fee expert challenging the reasonableness of the rates charged and number of hours expended by Landmark's counsel. The affidavit opined that $200 per hour was a reasonable rate for partner work on the case, $100 per hour was a reasonable rate for low-level associate work on the case, and $75 was a reasonable rate for paraprofessional work on the case. The latter two figures were lower than the rates requested by Landmark.

The magistrate judge determined that Landmark was entitled only to costs, attorneys' fees, and expenses associated with the motion to dismiss and the numerous motions to compel Landmark filed earlier in the litigation. The magistrate judge also decided that Landmark was entitled to reasonable costs and attorneys' fees it incurred from August 28, 2014 forward pursuant to § 768.79(6)(a), as Danubis obtained a judgment "at least 25% less" than Landmark's $2,500 offer and the statute's other requirements were met. The magistrate judge explained that the period from August 28, 2014 forward "encompassed" all the costs and attorneys' fees associated with the motion to dismiss and the motions to compel, "so the award should be based on the time period from August 28, 2014 onward." Second R. & R., Doc. 168 at 14.

Rejecting the opinions of the parties' fee experts for various reasons, the magistrate judge determined based on his own expertise that $200 per hour was a

17

reasonable rate for a managing partner at an insurance defense firm in central Florida and that $125 and $75 represented reasonable rates for a low-level associate and paraprofessional, respectively. The magistrate judge did not explain how he arrived at his conclusion that these rates were reasonable. Moreover, accounting for Landmark's own missteps, the magistrate judge proceeded to cut the number of hours of work for which Danubis and Ambler were responsible by 20%, across each individual who worked on the case for Landmark. In total, the magistrate judge determined that Landmark was entitled to $78,903.20 in attorney's fees and $12,778.22 in costs.

In determining how to apportion responsibility for the award between Danubis and Ambler, the magistrate judge remarked that if the basis of the award was solely § 768.79(6)(a), then the entire award would be chargeable to Danubis alone. Nonetheless, citing Radulovic's active involvement in the initiation and pursuit of this litigation and Ambler's repeated inadequacies, the magistrate judge recommended that Danubis and Ambler be held jointly and severally liable for the award.

The district court adopted the Second Report and Recommendation over Ambler's objection. Ambler timely appealed, arguing that the district court erred in imposing sanctions on him, calculating the amount of the sanctions, and apportioning the award between himself and Danubis.

18

## II.    STANDARD OF REVIEW

We review a district court's sanctions order for abuse of discretion. *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1237 (11th Cir. 2006). "When employing an abuse-of-discretion standard, we must affirm unless we find that the district court has made a clear error of judgment, or has applied the wrong legal standard." *Id*. at 1238 (alteration omitted). "A decision that is contrary to the law plainly is an abuse of discretion." *Id*.

## III.    DISCUSSION

### A.    The District Court Afforded Ambler Proper Notice Before Imposing Sanctions.

Ambler argues that the district court did not afford him proper notice that he could be sanctioned for an inadequate pre-complaint investigation pursuant to Rule 11 or the court's inherent power. We disagree.

A court may not impose sanctions on an attorney pursuant to Rule 11 on its own initiative unless the court has issued an order requiring the attorney to "show cause why conduct specifically described in the order has not violated Rule 11(b)." Fed. R. Civ. P. 11(c)(3), (5). "While formal compliance with [Rule 11's show-cause order requirement] is the ideal, we apply a flexible standard, so in many cases substantial compliance may suffice." *Kaplan v. DaimlerChrysler, A.G.*, 331 F.3d 1251, 1257 (11th Cir. 2003) (internal citations omitted). In *Kaplan*, we ruled that the district court improperly imposed Rule 11 sanctions without adequate

19

notice. *See id.* There, the district court issued an oral show cause order identifying one specific filing as the possible basis for sanctions, but ultimately imposed Rule 11 sanctions based both on that filing and a series of filings not identified in the show cause order. *Id.* at 1253-54.

Here, however, the court sufficiently apprised Ambler of the possibility that he could be sanctioned for misconduct surrounding the complaint. Ambler argues that in noticing an evidentiary hearing on Landmark's motion to dismiss, the district court specifically limited the possible bases for sanctions to the subject of Landmark's motion—which, in Ambler's view, was the alleged fabrication of the 2010 Metzger affidavit. According to Ambler, because the evidentiary hearing notice only warned that the parties and counsel might be sanctioned for conduct associated with fabrication of the 2010 affidavit, the court was not empowered to sanction him once it determined that the affidavit was genuine. Ambler's argument is essentially that the court could not sanction him without further notice because it uncovered a *different fraud*—Metzger and Radulovic's collusion to defraud Landmark—at the evidentiary hearing, and Ambler was not on notice that his conduct with regard to that fraud was at issue.

Like Ambler's behavior throughout this litigation, this argument is wildly off base. On appeal, Ambler fails to cite the final segment of the magistrate judge's evidentiary hearing notice, which warned:

> **All parties and counsel are further advised** that, should the evidence support a finding that any party, witness or counsel participated in any way in the perpetration of a fraud in this matter, the Court will consider the full measure of sanctions available, including, if appropriate, referral to the United States Attorney or other appropriate authorities for investigation and/or prosecution.

Evidentiary Hr'g Order, Doc. 88. The order explicitly placed Ambler on notice that if he "participated in any way in the perpetration of a fraud in this matter," he could be sanctioned. Contrary to Ambler's assertion, the order was not limited to the fabrication of the 2010 Metzger affidavit. To the extent Ambler argues that the magistrate judge improperly imposed sanctions because the subject matter of the evidentiary hearing order did not encompass the factual findings the district court ultimately made, we reject his argument as meritless.

Alternatively, Ambler argues that he was never warned that his pre-trial investigation was a possible basis for sanctions. Indeed, the magistrate judge did not find that Ambler was a knowing or willful participant in Radulovic's fraudulent scheme; the magistrate judge merely found that Ambler's reckless failure to conduct due diligence made him an unwitting agent of Radulovic's scheme. The problem with Ambler's argument is that the evidentiary hearing order's warning did not limit its terms to knowing or intentional participants in a fraud. It explicitly cautioned "that any party, witness or counsel [who] participated *in any way* in the perpetration of a fraud in this matter" could be sanctioned. Evidentiary Hr'g Order, Doc. 88 (emphasis added). The magistrate judge

21

subsequently found that Ambler participated in Radulovic's perpetration of a fraud by way of his "reckless disregard for the truth of" the allegations in the complaint. First R. & R., Doc. 119 at 28.

Ambler, therefore, was sufficiently on notice that his pre-trial investigation was a possible basis for sanctions. Consequently, the district court substantially complied with Rule 11's notice requirements for court-initiated sanctions. For the same reasons, Ambler's argument that the district court failed to properly apprise him of the basis for sanctions based on the court's inherent power also lacks merit. *See In re Mroz*, 65 F.3d 1567, 1575 (11th Cir. 1995) ("Due process requires that the attorney (or party) be given fair notice that his conduct may warrant sanctions and the reasons why.").[2]

## B.    The District Court Did Not Err in Imposing Rule 11 Sanctions.

Next, Ambler argues that the district court improperly imposed Rule 11 sanctions based on the complaint, which was filed in state court, not federal court. In so arguing, Ambler cites *Worldwide Primates, Inc. v. McGreal*, 26 F.3d 1089, 1091 (11th Cir. 1994), where we noted that "Rule 11 does not apply to pleadings filed before removal." This much is axiomatic. Two sentences later, however, we noted a limitation on this rule: "[A]lthough [the plaintiff's] complaint, which was

---

[2] We also note that the magistrate judge's repeated warnings that Ambler could be sanctioned for his various discovery inadequacies more than sufficed to satisfy due process to the extent the sanctions are based Federal Rules of Civil Procedure 16 and 37.

22

filed in state court, cannot be the basis of a Rule 11 violation, any subsequent federal court filings . . . are sanctionable if they resulted in the continuation of a baseless lawsuit." *Id.* Ambler argues that the district court only cited the complaint as a basis for sanctions, but this is belied by the text of the First Report and Recommendation, which also cites to a number of subsequent filings Ambler made in furtherance of the frivolous complaint, including Ambler's effort to amend the complaint, his proposed findings of fact after the evidentiary hearing, and an affidavit he drafted containing statements that the affiant subsequently recanted at the evidentiary hearing. Moreover, Ambler made no effort to amend the complaint once the case was removed to federal court, and in fact he continuously defended the complaint, as initially filed, until Landmark filed its motion to dismiss for fraud. The district court did not err in imposing Rule 11 sanctions.

**C.    The District Court Erred in Determining the Amount of the Sanctions Award and in Apportioning the Award Between Danubis and Ambler.**

We use the lodestar approach to determine the amount of attorney's fees and costs to which a party is entitled. Under this approach, "the starting point in any determination for an objective estimate of the value of a lawyer's services is to multiply hours reasonably expended by a reasonable hourly rate." *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation."

23

*Id.* "Although the district court has wide discretion in exercising its judgment on the appropriate fee based on its own expertise, that discretion is not without limits. A conclusory statement that a fee is reasonable in light of the success obtained is generally insufficient." *Id.* at 1304. "The court's order on attorney's fees must allow meaningful review—the district court must articulate the decisions it made, give principled reasons for those decisions, and show its calculation." *Id.*

Ambler argues that the magistrate judge insufficiently explained his rejection of Ambler's expert's determination that Landmark's counsel spent an unreasonable amount of time in the prosecution of its motion to dismiss. This argument is belied by the Second Report and Recommendation, which reflects a well-reasoned determination of the work hours to be included in the award. The magistrate judge assessed a variety of factors indicating that Landmark was not entitled to full payment of its claimed fees, including Landmark's own missteps in litigating the case; the fact that some bills reflected a partner performing a low-level task; and the bills' inclusion of unnecessary travel time. The magistrate judge proceeded to make specific findings with regard to the reasonableness factors outlined in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-18 (5th Cir. 1974), including the time, labor, and skill required for the suit; the novelty of the issues; and the experience, reputation, and ability of Landmark's counsel, among other factors. In short, the Second Report and Recommendation

24

provided ample explanation with regard to court's determination of the reasonable number of hours to be included in the award.

Nevertheless, Ambler raises three additional points of error that we find meritorious. First, the Second Report and Recommendation reflects a lack of thorough consideration of a reasonable hourly rate for Landmark's counsel. After explaining that it would be making the reasonable rate determination based on its own expertise, the district court simply concluded—without any explanation—that $200 per hour was a reasonable rate for the partner on the case, $125 was a reasonable rate for a low-level associate, and $70 per hour was a reasonable rate for paraprofessional work. However, any assertion on Ambler's part that the district court erred in determining that $200 per hour and $70 per hour were reasonable rates for the partner and paraprofessionals, respectively, is invited error. Ambler's own fees expert suggested that the district court adopt rates equal to or higher than those found to be reasonable by the district court for partner and paraprofessional work. Consequently, Ambler may not now challenge the court's determination of those reasonable rates on appeal. *See Pensacola Motor Sales Inc. v. E. Shore Toyota, LLC*, 684 F.3d 1211, 1231 (11th Cir. 2012) ("A party that invites an error cannot complain when its invitation is accepted.").

For low-level associate work, however, Ambler's expert suggested a rate of $100 per hour, while the magistrate judge found, based on his own expertise but

25

without explanation, that a $125 per hour rate was reasonable.  On remand, the district court should determine the reasonable rate for low-level associate work in this case and "give principled reasons" for its determination.  *Norman*, 836 F.2d at 1304.  Those "principled reasons" should reflect the district court's basis for believing that the rate it selects is "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation."  *Id.* at 1299.[3]

Second, the district court erred in failing to consider Ambler's ability to pay before determining the amount of monetary sanctions levied against him.  When imposing sanctions pursuant to the court's inherent power, 28 U.S.C. § 1927, or Rule 11, a district court must consider the sanctionee's ability to pay the monetary award.  *Martin v. Automobili Lamborghini Exclusive, Inc.*, 307 F.3d 1332, 1337 (11th Cir. 2002).  A court "abuse[s] its discretion by imposing joint and several liability without considering whether each [person or entity being sanctioned] individually had the ability to pay the sanction."  *Id.*  Here, the Second Report and Recommendation never discussed and does not reflect that the magistrate judge considered Ambler's—as opposed to Danubis's—ability to pay the sanction award. This was an abuse of discretion.

---

[3] To the extent Ambler argues that the district court was required make a separate reasonableness determination specifically mentioning Federal Rule of Civil Procedure 37(a)(5) before it could impose monetary sanctions based on that rule, we reject Ambler's argument as meritless.

Third, we agree with Ambler that the magistrate judge abused its discretion by holding Ambler and Danubis jointly and severally liable for all of Landmark's reasonable fees that arose after August 28, 2014.  The magistrate judge determined that Landmark was entitled to attorney's fees and costs for three specific categories: (1) for time spent in relation to the motion to dismiss and evidentiary hearing; (2) for time spent in connection with the motions to compel; and (3) for the time period from August 28, 2014 onward, pursuant to Florida Statutes § 768.79.  When apportioning the award, the district court properly recognized that if § 768.79 were the sole basis for the award, it would fall solely on Danubis's shoulders because the statute explicitly assigns liability to the plaintiff.  *See* Fla. Stat. § 768.79(6)(a) ("When such costs and attorney's fees total more than the amount of the judgment, the court *shall enter judgment for the defendant against the plaintiff* for the amount of the costs and fees, less the amount of the award to the plaintiff." (emphasis added)).  Yet the district court determined that Ambler was liable for fees and costs arising after August 28, 2014 that had nothing to do with either the motion to dismiss or the motions to compel and could only have been awarded pursuant to § 768.79.  Consequently, the district court committed legal error by assigning Ambler liability for fees and costs that, pursuant to the relevant statute, should have been assigned solely to Danubis.

27

Therefore, on remand, the district court should: (1) determine a reasonable rate for a low-level associate in this case and provide a legally sound explanation for its determination; (2) consider what effect, if any, Ambler's ability to pay has on the award amount; and (3) apportion to Ambler liability only for costs associated with the motion to dismiss and the motions to compel.

## IV.    CONCLUSION

For the foregoing reasons, we hold that the district did not err in imposing monetary sanctions against Ambler. Nonetheless, we vacate the district court's determination of the amount and apportionment of the sanctions and remand for proceedings consistent with this opinion.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**